# EXHIBIT I



700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
O 202.772.2200
F 202.772.3333

GilbertLegal.com

**Matt Lavin**
202.772.2250
LavinM@gilbertlegal.com

April 14, 2026

**VIA EMAIL**

Ryan Smith
Blue Cross and Blue Shield of Florida
ryan.smith@bcbsfl.com

Re:    Demand for Payment of Outstanding Claims; Improper Eligibility and Enrollment Verification; and Cease and Desist from Potential Retroactive Policy Terminations

Dear Mr. Smith:

I represent 38 treatment facilities identified at the end of this letter (collectively, the "Providers"). My clients have been assigned rights to pursue all methods necessary to obtain the benefits owed to them under their patients' insurance policies. This correspondence serves as a litigation hold and to place Blue Cross and Blue Shield of Florida ("Florida Blue") on formal notice of a dispute arising from Florida Blue's refusal to process and remit payment for properly authorized, medically necessary services rendered to its members who received services from my clients. This letter also demands, possibly pre-emptively, that Florida Blue desist from any attempts retroactively terminate relevant policies or begin any process with the Centers for Medicare and Medicaid Services ("CMS") seeking permission to rescind. On behalf of the Providers, I further request that Florida meet with me within the next two weeks to discuss the issues and concerns identified in this letter.

Florida Blue's conduct is not a claims dispute—it is an unlawful and inequitable scheme to retroactively evade payment. After verifying members' eligibility, issuing authorizations, and allowing treatment to proceed, Florida Blue has deployed an "Eligibility and Enrollment Verification Questionnaire and Attestation" (the "Questionnaire") as a post-treatment barrier to payment. An example of this form is attached. The Questionnaire is not a legitimate administrative tool; it is a deliberate attempt at post-claims underwriting designed to frustrate coverage after care has been delivered and thereby shift the financial burden of treatment onto the Providers.

These practices must cease.

Beginning in or around October 2025, Florida Blue began mailing the Questionnaire—misrepresented as a routine administrative health form—to members' Florida addresses while those members were actively receiving treatment in California or shortly after discharge. Florida Blue did so knowing that many

April 14, 2026
Page 2



members have limited or no access to their mail while in treatment and knowing that non-response would be used as a basis to withhold or deny payment.

The Questionnaire has nothing to do with clinical care. Instead, it interrogates members about Marketplace enrollment logistics: who assisted them, whether incentives were offered, who paid premiums, where they lived at the time of enrollment, and why they sought care outside Florida. It further probes whether providers or facilities assisted with transportation, housing, or other support.

The true purpose of this probe is obvious and improper: Florida Blue is attempting to manufacture post hac eligibility disputes as a pretext to retroactively terminate members' benefits and avoid paying the Providers or even recoup funds previously paid. These actions take place well after the member had paid the premiums and the Providers verified member's eligibility and plan status, obtained any required authorizations, and rendered care in good faith.

Congress enacted the Patient Protection and Affordable Care Act ("ACA")[1] to expand access to health coverage and eliminate precisely this sort of gamesmanship. Members properly applied and purchased coverage through the Marketplace website, providing all required personal information and satisfying statutory eligibility criteria: residence in the United States, lawful presence, and non-incarceration.[2] Once enrolled, members were entitled to rely on the coverage Florida Blue sold to them

Members sought treatment in California—as permitted by the terms of their insurance policies. During the Eligibility/Verification of Benefits ("VOB") process, Florida Blue disclosed no out-of-area exclusions or limitations that would have restricted these members' ability to seek care out of state. Temporary relocation for treatment does not alter residency status under the ACA, nor does it authorize an insurer to terminate coverage. Federal law expressly prohibits termination based on a "temporary absence from the service area" where the individual intends to return after the purpose of the absence is fulfilled.[3] Seeking lifesaving substance use disorder treatment plainly qualifies.

The Providers relied on representations made during the VOB process to determine whether to admit members into treatment. Coverage is confirmed, authorizations are obtained, care is provided, and claims are submitted in accordance with Florida Blue's established procedures. Florida Blue cannot now disavow its own confirmations and authorizations to avoid payment. Doing so breaches the implied-in-fact contracts formed through its course of dealing and unjustly enriches Florida Blue at the expense of providers who delivered essential care.

The procedural design of the Questionnaire underscores its improper purpose. Florida Blue knowingly sends it only by mail, refuses to accept electronic responses, imposes an arbitrary 45-day deadline, and withholds payment unless the member complies. Florida Blue does this despite knowing that members

---

[1] Patient Protection and Affordable Care Act, Pub. L. No. 111-148, §124 Stat. 119 (2010).

[2] U.S. Dep't of Health & Hum. Services, *Apply for or Renew Coverage*, HEALTHCARE.GOV, https://www.healthcare.gov/downloads/apply-for-or-renew-coverage.pdf (last visited Mar. 12, 2026); U.S. Dep't of Health & Hum. Services, *A quick guide to the Health Insurance Marketplace*, HEALTHCARE.GOV, https://www.healthcare.gov/quick-guide/eligibility/ (last visited Mar. 12, 2026).

[3] 45 C.F.R. § 155.305(a)(3)(v).

April 14, 2026
Page 3



are temporarily residing in treatment facilities far from their permanent homes and may have limited or no access to mail. The Providers have no control over these circumstances, and their entitlement to payment cannot lawfully be conditioned on this contrived hurdle.

Florida Blue's obligations to the Providers arise from the representations made during the VOB and utilization-review process and from Florida Blue's consistent historical practice of paying for authorized services. The Providers reasonably relied on those representations in delivering care. Florida Blue's refusal to pay constitutes breach of contract, unjust enrichment, and other actionable misconduct, all of which expose Florida Blue to liability for damages and equitable relief.

Accordingly, we demand that Florida Blue refrain from petitioning CMS to rescind the policies at issue; refrain from any form of post-claims underwriting based on enrollment-related inquiries after services have been authorized and rendered; immediately cease any refund or collection attempts related to previously rendered services for the Providers; and promptly process and remit full payment for all outstanding claims for services rendered by the Providers. Florida Blue should in no case request retroactive termination of any relevant member's coverage based on responses or non-responses to its impermissible Questionnaires.

Absent prompt resolution, the Providers are prepared to pursue all available remedies. Nothing in this letter constitutes a waiver of rights, claims, or remedies, all of which are expressly reserved.

We look forward to Florida Blue's reply on these matters and to my clients' receipt of payment for services rendered without further delay.

Please let me know your availability to meet and confer in the next two weeks. To the extent we do not hear from you before May 1, 2026, I will assume that Florda Blue is not interested in resolution at this stage and my clients take appropriate action.

Sincerely,


Matt Lavin


  cc:    Nicole Wemhoff

April 14, 2026
Page 4

**GILBERT** LLP

### Addendum: Provider List

| | Facility Name | Tax ID |
|---|---|---|
| 1. | MAS Pro Group dba Wish Recovery IOP | |
| 2. | Essence Recovery Center Inc. | |
| 3. | Comfort Recovery | |
| 4. | Uplift Recovery Center LLC | |
| 5. | Uplift Recovery Noho LLC | |
| 6. | Avan Wellness Center | |
| 7. | Rise and Renew Inc | |
| 8. | Inspire Recovery Center Inc. | |
| 9. | Pathway to Recovery Inc. dba Lime Recovery Center | |
| 10. | Innervisions Recovery Center LLC | |
| 11. | Lakeridge Recovery Center | |
| 12. | Harmony Hills Recovery Inc. | |
| 13. | Love & Light Recovery Center Inc | |
| 14. | New Breath Recovery | |
| 15. | Entrust Recovery Center Inc. | |
| 16. | 4 Season Detox And Recovery House Inc | |
| 17. | Inner Light Recovery LLC | |
| 18. | Babal Inc dba Goodland Recovery | |
| 19. | Spiritual Wellness and Recovery Inc | |
| 20. | Sun And Moon Rehabilitation | |
| 21. | EHG Enterprises Inc. dba Bliss Recovery | |
| 22. | Deluxe Treatment Center Inc. | |
| 23. | AMS Pro Group dba Wish Recovery | |
| 24. | CA Drug Detox LLC | |
| 25. | Nebo Hill Treatment Center | |
| 26. | Serenity Path Recovery Inc | |
| 27. | 1st House of Life Inc | |
| 28. | Clear Conscience Treatment Center | |
| 29. | New Life Inc dba Luxe Recovery | |
| 30. | Saint Lawrence Recovery | |
| 31. | Medichex Inc. dba Lift Off | |
| 32. | LNA Realty dba Luxe Recovery | |
| 33. | Comfort Recovery Treatment Center dba Comfort Detox | |

April 14, 2026
Page 5



| 34. | Meta Wellness Inc dba Meta Wellness | |
|---|---|---|
| 35. | Blue Stream Enterprises Inc. dba Lost Angels Treatment Center | |
| 36. | We Care Outpatient LLC | |
| 37. | Vanity Detox Center, Inc. | |
| 38. | Vanity Wellness Center Incorporated | |